UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

DEANDRE WILLIAMS, also known as DAVID WILLIAMS,

                Plaintiff,

v.

ANTHONY ANNUCCI, Commissioner of NYS DOCCS,[1]

                Defendant.

9:11-cv-379 (BKS/TWD)

---

**Appearances:**

*For Plaintiff:*
Ryan G. Files
Gattuso & Ciotoli, PLLC
7030 East Genesee Street
Fayetteville, NY 13066

*For Defendant:*
Letitia James
Attorney General of the State of New York
Keith Starlin
Robert Rock
Assistant Attorneys General, Of Counsel
The Capitol
Albany, NY 12224

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiff DeAndre Williams commenced this action in 2011 asserting a number of claims arising out of Defendants' alleged refusals to recognize his Nazarite religion and provide him

---

[1] Plaintiff sued the "Commissioner of NYS DOCS." The Clerk of the Court is respectfully directed to change the docket to reflect the correct entity name, "NYS DOCCS."

with a diet that complies with his religious dietary restrictions. After many years of litigation and on remand from the Second Circuit, Plaintiff's sole remaining claim is one for injunctive relief under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc et seq., against Defendant Anthony Annucci. *See Williams v. Annucci*, 895 F.3d 180, 184, 194 (2d Cir. 2018). On November 1, 2021, the Court held a bench trial in Syracuse, New York, at which three fact witnesses testified. (Text Minute Entry Nov. 1, 2021). Defendant submitted a post-trial brief on the question of whether Plaintiff's RLUIPA claim for injunctive relief is moot. (Dkt. No. 287). After carefully considering the trial record, the credibility of the witnesses at trial, and the submissions of the parties, the Court determines that the action is moot and must be dismissed.

## II.  FINDINGS OF FACT[2]

### A.  Plaintiff's Religious Beliefs[3]

Plaintiff, a 60-year-old man, testified that he follows the law of the Nazarite as his religion. The book of Numbers, Chapter 6 of the Torah sets forth the requirements that those taking the vow of the Nazarite must follow. The Torah also contains examples of individuals, such as Samson, who were Nazarites and illustrate the vow. Plaintiff testified that, while there is overlap between the Nazarite faith and other religions such as Catholicism or Judaism, Nazarites do not follow any particular religious leaders or teachers. Rather, Plaintiff learned about the Nazarite faith from his family and elders, particularly his mother and grandmother.

---

[2] The Court cites to Plaintiff's trial exhibits as "P-_" and Defendant's trial exhibits as "D-_." When citing to exhibits admitted into evidence at trial, the Court cites to the Bates numbering assigned to each document where possible.

[3] The Court has, for the purpose of this decision, assumed that the beliefs Plaintiff described in his testimony are sincerely held. Since Defendant has offered Plaintiff a menu that complies with the religious dietary needs he has identified, the sincerity of those beliefs was not the subject of this trial.

As relevant here, Plaintiff testified that the law of the Nazarite requires its adherents to comply with certain dietary restrictions.[4] Plaintiff testified that he is not allowed to eat anything from the vine, including grapes, grape seeds or skin, and vinegars. Plaintiff also may not consume alcohol of any kind. Plaintiff testified that the purpose of these requirements is to keep the body clean. A Nazarite also may not touch a dead corpse or eat meat or flesh of any kind. This requirement stems from the commandment that one shall not kill. Plaintiff also testified that he may not eat eggs and that his meals must be Kosher. In sum, Plaintiff's Nazarite faith requires him to have Kosher meals free of grapes or anything derived from grapes, vinegar, alcohol, meat (including fish and seafood), and eggs.

Plaintiff testified that he first took the vow to be a Nazarite and follow the requirements set forth in Numbers 6 when he was approximately 14 years old. Plaintiff testified that he intended his vow to be lifelong, because he has chosen right over wrong and tries every day to do better than the day before. Plaintiff stated that he has broken his vow twice, once in 1983 and once in 1997. Plaintiff retook and recommitted to his vow and testified that he has not broken his vow since 1997.

B.   **Plaintiff's Incarceration**

Plaintiff has been incarcerated in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") since 1998. Plaintiff currently is incarcerated at the hospital unit at Wende Correctional Facility ("Wende") and previously was housed in a variety of other correctional facilities, including Five Points, Green Haven, Upstate, Clinton, and Comstock. Plaintiff testified that he informed DOCCS of his Nazarite religion on

---

[4] Plaintiff testified regarding other components of the Nazarite faith, including striving to do good over bad and refraining from cutting one's hair. These practices are not at issue in this case.

multiple occasions. (*See also* P-1 ("Change of Religious Designation Form" from 2006 in which Plaintiff professes to be of the "Nazarite (Numbers 6)" faith)); P-12 ("Change of Religious Designation Form" from 2015 in which Plaintiff states he is of the "Nazarite" faith "of the Isra[e]lites")). He also testified that he informed DOCCS of his religious dietary restrictions by writing letters and filing grievances. (*See also* P-10 (handwritten grievance from 2010 discussing Plaintiff's religious dietary restrictions); *see id.* at 000017 ("I am prohibited from eating meat as well as grapes and vinegar."), 000026 (attaching "Vow of the Nazarite" to the grievance)).

Plaintiff testified that at the beginning of his sentence he received the menu that is provided to the general population, known as the general confinement menu. (*See* D-6 ("General Confinement Menu"), D-7 (nutritional analysis for the General Confinement Menu)). Plaintiff could not eat this menu because it contained eggs, meat, grapes, and vinegar. Plaintiff testified that at some point he also received the cold alternative diet, a diet which DOCCS provided to inmates who cannot eat the general confinement menu.[5] The cold alternative diet also contained food Plaintiff could not eat, including meat, grape products, and vinegar. Plaintiff testified that food he cannot eat, particularly meat, contaminates the rest of the food on the tray, and that he may be able to eat a piece of fruit that is provided. He requested that, as an accommodation of his religious beliefs, DOCCS keep prohibited foods off of his trays and give him salad or extra fruit.

Plaintiff, who has and is being treated for hypertension, currently receives a low sodium diet known as the "Controlled A" diet. (*See* D-8 ("NYDOCCS' Modified Menu 9-6-2021"); D-9 (nutritional breakdown for the Controlled A diet)). The Controlled A diet is not Kosher. Plaintiff testified that he eats the fruit provided to him and will eat items such as rice, beans, and

---

[5] DOCCS no longer offers the cold alternative diet.

4

vegetables if the tray does not have meat or egg on it.[6] Plaintiff generally collects the food items he will eat at each mealtime and saves them to eat once a day.

### C. Menus Offered to Plaintiff by DOCCS

Christine Olney, the DOCCS Correctional Food and Nutritional Services Director, testified regarding the menus DOCCS has offered to Plaintiff during his incarceration and the menus DOCCS is currently able to offer Plaintiff as an accommodation for his religious beliefs.[7] Ms. Olney has a degree in nutrition and is a registered dietician. In her current position, Ms. Olney is responsible for DOCCS materials, policies, and procedures related to food and nutrition, which are developed on a statewide basis. She has overall responsibility for the development of menus and reviews and approves all menus in the DOCCS system.

#### 1. Prior Menus Offered to Plaintiff

DOCCS offered a menu to Plaintiff in the fall of 2018 that was a "Kosher menu – no meat, fish, poultry, dairy, eggs, grapes." (*See* D-10). Plaintiff accepted the menu for some period of time. DOCCS offered another version of that same menu which omitted bran flakes, after Plaintiff requested he not be given cold cereal because he does not drink milk. (*See* D-11 (menu dated April 8, 2019 and entitled "Kosher menu – no meat, fish, poultry, dairy, eggs, grapes – no bran flakes"); *see also* D-4, at 51 (discussing Plaintiff's milk intolerance)). Ms. Olney acknowledged that this menu did not account for Plaintiff's vinegar restriction. Although this version of the menu was offered to Plaintiff, Ms. Olney did not know whether Plaintiff accepted it.

---

[6] Plaintiff does not eat the wheat bread provided with this menu because he does not like it.

[7] Although Plaintiff testified that he has not been offered any diet other than the general confinement, cold alternative, and Controlled A diets, the Court finds Ms. Olney's thorough testimony regarding other menus offered to Plaintiff credible. The Court has therefore credited that testimony.

5

Plaintiff was offered another menu in May 2019 that was Kosher and had no meat, fish, poultry, dairy, eggs, grapes, vinegar, bran flakes, or fruit cup. Ms. Olney explained that the fruit cup was removed from the menu at Plaintiff's request because it contained grape juice. She was unsure whether Plaintiff ever accepted this version of the menu. In January 2020, DOCCS offered another version of the menu with the same restrictions but which also removed the "Meatless Southern BBQ" entrées that were included on previous menus. (*Compare* D-13, *with* D-12). Ms. Olney testified that the Meatless Southern BBQ entrée was removed because it is soy-based and Plaintiff complained that he could not eat food items containing a lot of soy. The entrée was replaced with a bean-based entrée. On February 5, 2020, DOCCS prepared another updated menu that was Kosher and had no meat, fish, poultry, dairy, eggs, grapes, vinegar, bran flakes, or fruit cup. (D-14). This menu was offered to Plaintiff but Ms. Olney did not know if Plaintiff accepted it.

Based on her education, training, and position as a registered nutritionist, Ms. Olney testified that all five menus previously offered to Plaintiff were nutritionally adequate for a person of his age, height, weight, and physical condition.

### 2. Menus DOCCS Is Currently Prepared to Offer Plaintiff

DOCCS is currently prepared to offer two different menus to Plaintiff. (*See* D-1, D-2). The first menu is Kosher and has no meat, fish, poultry, dairy, eggs, grapes, or bran flakes. (D-1, at 1–3 (menu and ingredient list)). The menu is also "modified" to address Plaintiff's hypertension. (*See id.* at 1). Ms. Olney testified that this menu is nutritionally adequate for a person of Plaintiff's age, height, weight, and physical condition. (*See also id.* at 4 (nutritional values)). However, this menu contains vinegar: "distilled vinegar" is listed as an ingredient in both "Black bean sauce" and "Tuscan bean sauce." (*Id.* at 2–3).

DOCCS is currently prepared to offer another menu that is Kosher and has no meat, fish, poultry, dairy, eggs, grapes, vinegar, or bran flakes. (D-2, at 1–2 (menu and ingredient list)). Ms. Olney testified that this menu is nutritionally adequate for a person of Plaintiff's age, height, weight, and physical condition. (*See also id.* at 3 (nutritional values)). The menu is also modified to be low in sodium and otherwise meet the requirements of a Controlled A diet. To develop this menu, Ms. Olney started with the standard, statewide Kosher menu and modified it to include Plaintiff's religious dietary restrictions, omit bran flakes, and adjust it for his hypertension. She ensures that the menu developed for Plaintiff lines up as closely as possible on a given day with what is normally provided on the standard Kosher menu. Ms. Olney testified that she is unaware of any reason why Plaintiff could not accept this version of the menu that DOCCS is currently prepared to offer him.

Dr. Shahid Haque, a physician and clinician employed by DOCCS who works at Wende, testified regarding the medical safety of the two menus DOCCS is presently able to offer Plaintiff as set forth in Exhibits D-1 and D-2. Dr. Haque reviewed Plaintiff's medical chart and records as well as the two menus and their nutritional information.[8] He testified that the menus are medically sound and pose no risk for Plaintiff, even accounting for his hypertension. Plaintiff's medical records indicate that his hypertension is well controlled, with recent measurements from September 2021 of 121/71, 133/81, and 112/68. Dr. Haque also stated that his review of Plaintiff's medical records indicated that since 2016 his weight has fluctuated around the range of 145 to 147 pounds, which is a healthy weight and results in a normal body mass index for someone of Plaintiff's height of five feet, seven inches. Dr. Haque testified that Plaintiff's medical records indicated that he appears to be generally healthy.

---

[8] Dr. Haque has not personally examined or treated Plaintiff.

Plaintiff provided no evidence that the menu contained in Exhibit D-2, which DOCCS is presently able to offer, fails to comply with his religious dietary restrictions. At trial, Plaintiff acknowledged that the menu in Exhibit D-2 is religiously compliant but stated that he would prefer to have fewer beans and more fruit or salad. (*See* D-2, at 1 (weekly menu containing ten "Kidney Bean Creole" entrées)).

### III. CONCLUSIONS OF LAW

#### A. RLUIPA

RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). To prevail on a RLUIPA claim, a plaintiff must "first demonstrate that the state has imposed a substantial burden on the exercise of her religion." *Williams*, 895 F.3d at 188; *see also Holt v. Hobbs*, 574 U.S. 352, 360–61 (2015). The burden then shifts to the defendant to demonstrate "that the challenged policy or action furthered a compelling governmental interest and was the least restrictive means of furthering that interest." *Williams*, 895 F.3d at 188 (quoting *Redd v. Wright*, 597 F.3d 532, 536 (2d Cir. 2010)). To demonstrate a substantial burden on religious exercise, a plaintiff must show that the government's action "pressures him to commit an act forbidden by his religion or prevents him from engaging in conduct or having a religious experience mandated by his faith." *Pugh v. Goord*, 571 F. Supp. 2d 477, 504–05 (S.D.N.Y. 2008) (citation omitted).

#### B. Mootness

Defendant argues that this action must be dismissed as moot because "DOCCS has been offering Plaintiff a nutritionally adequate/medically sound menu" that complies with his

religious dietary restrictions, which is "the only relief [Plaintiff] is entitled to under his sole surviving RLUIPA claim." (Dkt. No. 287, at 9–10).

For the Court to retain jurisdiction over this matter, "an actual controversy must exist at all stages of review, not merely at the time the complaint is filed." *Williams*, 895 F.3d at 187 (quoting *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) (per curiam)). A case is deemed moot "where the problem sought to be remedied has ceased, and where there is no reasonable expectation that the wrong will be repeated." *Id.* In other words, a case is moot when "the parties lack a legally cognizable interest in the outcome." *Chevron Corp. v. Donziger*, 833 F.3d 74, 123–24 (2d Cir. 2016) (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)). For a case to be moot, therefore, it must be "impossible for a court to grant any effectual relief whatever to the prevailing party." *Williams*, 895 F.3d at 187 (quoting *Chevron*, 833 F.3d at 124).[9]

An exception to the mootness doctrine exists for challenged actions that are "capable of repetition, yet evading review." *Pugh*, 571 F. Supp. 2d at 488 (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)). Provided the action is not a class action—which this action is not—the exception applies if "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [i]s a reasonable expectation that the same complaining party would be subjected to the same action again." *Murphy*, 455 U.S. at 482 (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per curiam)).

Here, the undisputed evidence shows that the "problem sought to be remedied"—DOCCS' failure to provide Plaintiff with a religiously-compliant diet—has "ceased." *Chevron*,

---

[9] Moreover, although not relied on by Defendant, RLUIPA itself contains a safe harbor provision providing that "[a] government may avoid the preemptive force of any provision of this chapter by changing the policy or practice that results in a substantial burden on religious exercise." 42 U.S.C. § 2000cc-3(e); *see also Williams*, 895 F.3d at 187 ("RLUIPA encourages institutions to accommodate inmate requests by exempting from liability institutions that change challenged policies . . . .").

9

833 F.3d at 123–24. DOCCS is currently prepared to provide Plaintiff with the menu contained in Exhibit D-2, which is a Kosher diet that contains no meat, fish, poultry, dairy, eggs, grapes, vinegar, alcohol, or bran flakes. (*See* D-2, at 1–2). Moreover, the testimony of Ms. Olney and Dr. Haque indicates that the menu is medically safe and nutritionally adequate for Plaintiff. Accordingly, Plaintiff has been offered all of the relief possible to him under his remaining claim for injunctive relief under RLUIPA. *See Williams*, 895 F.3d at 186 (describing Plaintiff's claim for injunctive relief as one for "a nutritionally adequate diet compliant with his religious beliefs"). That Plaintiff would prefer a diet with more fruit and salad and fewer bean entrées does not alter the fact he is being offered a nutritionally adequate menu which complies with the religious dietary restrictions he identified. *See, e.g.*, *Abdul-Malik v. Goord*, No. 96-cv-1021, 1997 WL 83402, at *6, 1997 U.S. Dist. LEXIS 2047, at *19 (S.D.N.Y. Feb. 27, 1997) (noting that a prison need only provide a diet "sufficient to sustain the prisoner in good health without violating [his religion's] dietary laws" (citation omitted)); *Strope v. Cummings*, 381 F. App'x 878, 880–82 (10th Cir. 2010) (holding that the plaintiff's complaints of "the inconvenience of non-preferred or occasionally unsatisfactory items in a meal," including less variation, wilted or rotten items, or lack of seasonal fruits and vegetables, did not establish a substantial burden on his religious observance of a kosher diet). Accordingly, the Court cannot "grant any effectual relief" to Plaintiff. *See Williams*, 895 F.3d at 187 (quoting *Chevron*, 833 F.3d at 124).

Moreover, Plaintiff cannot satisfy the exception to mootness because there is "no reasonable expectation that the wrong will be repeated." *See id.* The evidence shows that DOCCS has been offering Plaintiff various menus in an attempt to accommodate his religious beliefs since at least 2018. (*See* D-10 through D-14). While not every menu complied completely with Plaintiff's dietary restrictions, the record indicates that DOCCS has made good faith efforts

10

to accommodate his religious dietary requests for many years and is not likely to abruptly refuse to do so in the future. Courts routinely dismiss claims for injunctive relief under RLUIPA as moot in such circumstances. *See, e.g.*, *Holland v. Goord*, 758 F.3d 215, 224 (2d Cir. 2014) (dismissing claim for injunctive relief under RLUIPA where the policy at issue had been amended and it was "clear that the allegedly wrongful policy is not likely to be reinstated"); *Sherwood v. Senecal*, No. 17-cv-899, 2019 WL 4564881, at *6, 2019 U.S. Dist. LEXIS 160295, at *13–14 (N.D.N.Y. Sept. 20, 2019) (finding the plaintiff's claim did not fall within the exception to mootness where he had been transferred out of the facility and the defendant was no longer employed there); *Patterson v. Moore*, 591 F. App'x 622, 623 (9th Cir. 2015) ("The district court properly concluded that Patterson's RLUIPA claim for injunctive relief was moot because after bringing this action, prison officials provided Patterson the meat kosher meals that he requested." (citing *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam))); *Nelson v. Miller*, 570 F.3d 868, 882–83 (7th Cir. 2009) (affirming finding of mootness where the plaintiff "currently receives a non-meat diet and there is no evidence that Tamms intends to revoke Nelson's religious diet," and the "theoretical[]" possibility that the defendant would revoke the religious diet was "supported only by speculation and not evidence"), *abrogated on other grounds by Jones v. Carter*, 915 F.3d 1147, 1149–50 (7th Cir. 2019).

Because Plaintiff's claim is moot, this Court lacks subject matter jurisdiction over the action, which must be dismissed. *Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013) ("Under Article III of the U.S. Constitution, 'when a case becomes moot, the federal courts lack subject matter jurisdiction over the action.'" (brackets and citation omitted)).

## IV.  CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's RLUIPA claim for injunctive relief is **DISMISSED** without prejudice; and it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

**IT IS SO ORDERED.**

Dated: December 10, 2021
Syracuse, New York

Brenda K. Sannes
U.S. District Judge